UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALEXIS HUNLEY, VANESSA CHARLOT, | ) | |
| DEE DWYER, KARISHA "KAY" | ) | |
| HICKMAN, ANTHONY "TONY" MOBLEY, | ) | |
| and MONTINIQUE MONROE, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case. No. 1:20-cv-08844-ALC |
| | ) | |
| v. | ) | DEMAND FOR JURY TRIAL |
| | ) | |
| BUZZFEED, INC. | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**PLAINTIFFS' MEMORANDUM OF LAW AND SUPPORTING AUTHORITIES IN OPPOSITION TO DEFENDANT BUZZFEED INC.'S MOTION TO DISMISS THE AMENDED COMPLAINT, AND IN THE ALTERNATIVE, SEVER THE FIRST AMENDED COMPLAINT AND STRIKE ALLEGATIONS**

James Bartolomei, Esq.
DUNCAN FIRM, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600 phone
501-228-0415 fax
james@duncanfirm.com

Bryan Hoben, Esq.
HOBEN LAW
1112 Main Street
Peekskill, NY 10566
347-855-4008 phone
914-992-7135 fax
bryan@hobenlaw.com

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES                                                          ii-iv

PRELIMINARY STATEMENT                                                          1

STATEMENT OF FACTS                                                            1

I. STANDARD OF REVIEW                                                         4

II. BUZZFEED FAILS TO SUSTAIN ITS BURDEN OF PROOF REGARDING FAIR USE 5

A. The Works As Used in the Listicle Post Are Not Transformative              7

B. Embedded Photos Are Subject to Copyright Act and The So-called Server Test is Not the Law of Second Circuit                                                              14

C. Instagram Never Granted Licenses to BuzzFeed of Plaintiffs' Copyrighted Photos    16

III. SEVERANCE WOULD BE INEFFICIENT AND BUZZFEED SUFFERS NO UNFAIR PREJUDICE BY DEFENDING THIS CASE IN ONE ACTION                                19

A and B. Plaintiffs' Claims All Arise From the Same Listicle Post and Common Questions of Law and Fact Are Predominate.                                                   19

C. Judicial Economy and Common Evidence Justify Allowing Joinder of Plaintiffs   21

D.  BuzzFeed Suffers No Unfair Prejudice                                      22

IV. THE AMENDED COMPLAINT CONTAINS ONLY MATERIAL AND PERTINENT ALLEGATIONS                                                                    22

CONCLUSION                                                                    25

## **TABLE OF AUTHORITIES**

**CASES**

*Archie MD, Inc. v. Elsevier, Inc.*, 261 F.Supp.3d 512 (S.D.N.Y. 2017) ………………………..3

*Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829 (S.D.N.Y. 2012)…………………………………..4

*Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634 (S.D.N.Y. 2020)……………………………………………………………………………………………4

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009)…………………………………….…….…………….4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) …………………………..…………………4

*Harris v. Mills*, 572 F.3d 66 (2d Cir. 2009)………………………………….…….…….……….4

*Carell v. Case Shubert*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000) (aff'd, 23 F.3d 398 (2d Cir. 1994))……………………………………………………………………………....………5

*Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994)….5

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir.2010)…………....……………………..……5

*Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610 (S.D.N.Y.2013)……………..……..5-6

*Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006)……………………………………….………...5

*BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp. 3d 499 (S.D.N.Y. 2015)………………………………………………………………………5, 6, 8, 9, 13, 14

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985)………...6, 7, 8, 12

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) )………………………...…6, 7, 9, 13, 14

*Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70 (2d Cir. 1997) ……………….…..6, 7, 9

*Iowa State Univ. Research Found., Inc. v. Am. Broad. Companies, Inc.*, 621 F.2d 57 (2d Cir.1980)…………………………………………………………………………..…………7

*Swatch Group Mgt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d (2d Cir. 2014)............................8-9

*Konangataa v. Am. Broadcasting companies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067 (S.D.N.Y. June 21, 2017)……………………………………………………………………9

*Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18 (1st Cir. 2000) ………………...……………9

*Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634 (JMF), 2017 WL 5032993 (S.D.N.Y. Nov. 2, 2017)……………………………………………………….……...……….9,10

*Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169 (2d Cir. 2018)…………………………9

*Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570 (S.D.N.Y. 2020)……………...……9, 10

*Boesen v. United Sports Publications, Ltd.*, No. 20CV1552ARRSIL, 2020 WL 6393010 (E.D.N.Y. Nov. 2, 2020)………………………………………………………...……10,11

*Castle Rock Ent., Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132 (2d Cir. 1998)……..……..…11

*Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515 (S.D.N.Y. 2018)…………….…………11

*NXIVM Corp. v. Ross Inst.*, 364 F.3d 471 (2d Cir. 2004)……………………………………12,13

*Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir.2013)……………………………………………..14

*Goldman v. Breitbart News Network, LLC*, No. 17-CV-3144 (KBF), 2018 WL 911340 (S.D.N.Y. Feb. 15, 2018)……………………………………………………….……………15, 16

*Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013), aff'd, 910 F.3d 649 (2d Cir. 2018)……………………………………………………………………………16

*Sinclair v. Ziff Davis, LLC,* No. 18-CV-790 (KMW), 2020 WL 3450136 (S.D.N.Y. June 24, 2020)………………………………………………………………………16, 17, 19

*Sinclair v. Mashable, Inc.*, No. 18-cv-790, Tr. (Dec. 1. 2020)…………………………...…..18

*McGucken v. Newsweek LLC*, 464 F.Supp.3d 594 (S.D.N.Y. 2020)………………...…………19

*United Mine Workers v. Gibbs*, 383 U.S. 715, 724, (1966)…………………………...…………19

*Oram v. SoulCycle LLC,* 979 F.Supp.2d 498 (S.D.N.Y.2013)………………………………..19

*Cia. Embotelladora del Pacifico v. Pepsi Cola Co.*, 256 F.R.D. 131 (S.D.N.Y.2009)…....…19-20

*N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111 (S.D.N.Y. 2015……...20

*Ardolf v. Weber,* 332 F.R.D. 467, 479 (S.D.N.Y. 2019)…………………………….…………..20

*Costello v. Home Depot U.S.A., In*c., 888 F. Supp. 2d 258, 264 (D. Conn. 2012).....................20

*Blackman v. Teespring, Inc.*, No. 19-CV-01494-RS, 2019 WL 7832600…………………....20

*Football Ass'n Premier League Ltd. v. YouTube, Inc.,* 297 F.R.D. 64 (S.D.N.Y. 2013)…..……22

*Lynch v. Southampton Animal Found.*, 278 F.R.D. 55 (2011)………………………………23, 24

*In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 402 F. Supp. 2d 434 (S.D.N.Y. 2005)……………………………………………………………………………….…………23

*United States ex rel. Raffington v. Bon Secours Health Sys.*, 285 F. Supp. 3d 759 (S.D.N.Y. 2018)……………………………………………………………………………………….23

*Mikropul Corp. v. Desimone Chaplin–Airtech, Inc.*, 599 F.Supp. 940 (S.D.N.Y. 1984)…...23-24

*Roe v. City of New York*, 151 F. Supp. 2d 495 (S.D.N.Y. 2001)…………………………….……23

*Stevens v. Aeonian Press, Inc.*, 2002 WL 31387224 (S.D.N.Y. Oct. 23, 2002)…...…………..24

*Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730 (S.D.N.Y. 1981)…...….24

*Marek v. Chesny*, 473 U.S. 1 (1985) …………………………………………...…………....24

*Mango v. Buzzfeed Inc.*, 970 F.3d 167 (2d Cir. 2020)……………………………………...…25

*RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382 (S.D.N.Y. 2009), aff'd, 387 F. App'x 72 (2d Cir. 2010)……………………………………………………………………………………….25

## STATUTES

17 U.S.C § 101……………………………………………………………………………………3
17 U.S.C § 412……………………………………………………………………………………3
17 U.S.C § 411(b)…………………………………………………………………………………3
17 U.S.C § 411(b)(1)……………………………………………………………………………3, 21
17 U.S.C § 106…………………………………………………………………………………5,6
17 U.S.C. § 107(3)………………………………………………………………………………13
Fed. R. Civ. P. 20(a)(1)…………………………………………………………………………20,21
F.R.E. 403……………………………………………………………………………..…………23
Fed. R. Civ. P. 12(f)…………………………………………………………………………23, 24
Fed. R. Civ. P. 68……………………………………………………………...…………………25
Fed. R. Civ. P. 12(b)(6)…………………………………………………………………………25

## SECONDARY SOURCES

The Gingerbread Man, St. Nicholas Magazine, May 1875……………………………………15

## PRELIMINARY STATEMENT

Plaintiffs Alexis Hunley, Vanessa Charlot, Dee Dwyer, Kay Hickman, Tony Mobley, and Montinique Monroe ("Plaintiffs" unless noted) respectfully submit Plaintiffs' memorandum of law in support of their joint opposition to Defendant BuzzFeed, Inc.'s ("BuzzFeed") motion to dismiss the Amended Complaint, or in the alternative, sever the first amended complaint and strike allegations (the "Motion")[Dkt. #35]. BuzzFeed's display of Plaintiffs' 8 copyrighted photos in the BuzzFeed online "listicle"[1] post (the "Post") is not protected by the fair use doctrine. BuzzFeed never obtained a license to display the photos. Plaintiffs are properly joined because all 8 photos were published in the same Post with common issues of law and facts predominating. Finally, all allegations are material and pertinent to Plaintiffs' claims. The Motion is premature for a fair use defense and whether BuzzFeed has proof of licenses to each of Plaintiffs' photos. Accordingly, the Motion must be denied in its entirety.

## I.   STATEMENT OF FACTS

The Amended Complaint ("AC") sets forth in detail the alleged facts and there is no need to repeat the same allegations here, except for a brief summary and to refute the misrepresentations in BuzzFeed's Motion. Generally, BuzzFeed infringed 8 copyrighted photographs owned by Plaintiffs, six (6) black photojournalists who risked their lives while capturing the historic Black Lives Matter protests in May and June 2020 (the "2020 BLM Protests"). Plaintiffs allege that BuzzFeed displayed their 8 photos by embedding each from Plaintiffs' respective Instagram accounts for non-transformative purposes. AC at ¶19 and Ex. A. to AC. There is <u>no</u> evidence in the record that BuzzFeed ever licensed or compensated any

---

[1] BuzzFeed is known for "listicles," easy-to-digest "promotional roundups" or lists of items with no commentary about any one photo. A listicle is a pejorative term for content that purports to give the viewer a truncated version of the contents of a traditional magazine article. AC at ¶ 63.

1

Plaintiff to embed their respective photos in the Post. AC at ¶ 1, 9 and 84. Simply put, BuzzFeed

stole Plaintiffs' photos, ironically celebrating its heist in an online post titled "17 Powerful

Pictures Of The Protests Through The Eyes Of Black Photographers." AC at  ¶1. BuzzFeed later

admitted: "**[t]his post has been updated and several photographs were removed because the

original list did not meet our editorial standards regarding photo permissions.**" *Id*. at ¶1.

Plaintiffs' photos were timely registered with the US Copyright office within 3 months of

publication, making statutory damages, attorneys' fees and costs a component of Plaintiffs'

claims. Id. at ¶80; Decl. of Bryan Hoben. At pages 4 and 5 and footnote 2 of the Motion,

BuzzFeed misrepresents that Plaintiff Hickman failed to allege evidence that her three (3) photos

in the "carousel" were embedded. See AC at ¶111, Ex. A. and E1 as evidence of the three photos

republished by BuzzFeed, indicated by the 3 white dots appearing on Hickman's first photo in

the Post. Each dots represent a photo embedded by BuzzFeed from Hickman's Instagram

account as shows by the by the red arrows. See Ex. B.

All Plaintiffs allege that "publication" occurred as defined by the Copyright Act.[2] In

posting their photo to Instagram, each Plaintiff necessarily distributed that photo to Instagram

and, per Instagram's Terms of Use, simultaneously granted Instagram a license to that photo.[3]

This is deemed "publication" under 17 U.S.C § 101, sufficient to register the photos as

"published" and permit Plaintiffs to seek statutory damages, fees and costs pursuant to 17 U.S.C

§ 412. Plaintiffs Dwyer, Hickman, Mobley and Monroe have supplemented their registrations to

---

[2] "'Publication' is the *distribution* of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication. A public performance or display of a work does not of itself constitute publication." 17 U.S.C. § 101 (emphasis added).

[3] Instagram Terms of Use effective 11/1/2017. https://www.facebook.com/help/instagram/1188470931252371

correct inaccurate information included on their copyright registration applications without knowledge that it was inaccurate when originally filed, specifically to correct the Publication Date of either May 30, 2020 (Monroe) or June 1, 2020 (Dwyer, Hickman, Mobley). See Decl. of Hoben (Ex. A) and 17 U.S.C § 411(b). Correcting a good faith error in a registration's publication status will not result in the invalidation of the registration and dismissal of the related claim (i.e. statutory damages, costs, and attorney's fees) because the directive in 17 U.S.C § 411(b)(1) mandates that "a copyright infringement claim should not be dismissed on account of inaccurate information that was inadvertently included in the copyright registration, whether or not the inaccurate information is material." *Archie MD, Inc. v. Elsevier, Inc.*, 261 F.Supp.3d 512, 518-519 (S.D.N.Y. 2017)(J. Rakoff). More importantly, publication is a fact issue and not appropriate here. Motion at 4-5, 17.

BuzzFeed objects to specific factual allegations made by each Plaintiff regarding the subject matter of their photos and the circumstances under which Plaintiffs captured them, characterizing the allegations as somehow "immaterial" and "impertinent." Motion at 6-7. However, BuzzFeed relies (*as its own factual editorializing*) on the circumstances described in the Post's copy to support its fair use defense in a post tellingly titled "17 Powerful Pictures Of The Protests Through The Eyes Of Black Photographers." BuzzFeed's attempt to whitewash critical facts in Plaintiffs' pleadings, if successful, would reduce this matter to a series of meaningless abstractions. The Motion is not the proper vehicle to make this point.

BuzzFeed also complains about allegations that it is a serial copyright infringer, but fails to acknowledge this allegation is a recognized component of enhanced copyright infringement damages factors. Motion at 7; AC at ¶¶67-78. BuzzFeed further objects that its counsel in this case was quoted about Instagram embedding by publicly declaring that "If you're a photographer

and you're going to be putting your stuff up [on Instagram], and you want to preserve your [copy]rights, you ought to care about the terms and conditions [of Instagram]. It's part of the due diligence of being a photographer." AC at ¶ 71. BuzzFeed fails to acknowledge that this admission by its counsel is relevant evidence as to BuzzFeed's liability and its knowledge regarding violations of Instagram policies and the Copyright Act. Astonishingly, BuzzFeed implies in a footnote that BuzzFeed never agreed to Instagram's terms of use or platform policy (because it was a "clickwrap agreement") and therefore it should not be held accountable. Motion at 14, footnote 4. *See also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 841 (S.D.N.Y. 2012) (Facebook user agreed to the Terms of Use from a "clickwrap" agreement); *and Valelly v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 464 F. Supp. 3d 634, 640 (S.D.N.Y. 2020)(Second Circuit routinely enforces clickwrap agreements as valid contracts). BuzzFeed takes this position in light of it having nearly 100 million followers on its various Instagram and Facebook accounts. AC at ¶65. BuzzFeed further objects to allegations about its web site traffic but fails to acknowledge that this is also relevant to Plaintiffs' election of actual damages and revenue generated for the Post. Id. at ¶¶64-66. BuzzFeed's Motion should be denied in full.

## I. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Id. The Court must accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009).

To make a prima facie showing of copyright infringement, a complaint must allege: "(1) which original works are the subject of the copyright claim; (2) that plaintiff owns the copyrights in those works; (3) that the copyrights have been registered in accordance with the statute; and (4) 'by what acts during what time' the defendant infringed the copyright." *Carell v. Case Shubert*, 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000) (quoting *Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 36 (S.D.N.Y. 1992), aff'd, 23 F.3d 398 (2d Cir. 1994)). Here, Plaintiff sufficiently plead the plausibility that BuzzFeed's use of Plaintiffs' copyrighted photos violated the Copyright Act. Plaintiffs established prima facie copyright infringement based on ownership of valid, registered copyrights, and Defendants' unauthorized display of their copyrighted works. See AC generally. BuzzFeed attacks Plaintiffs' alleged characterizations of the photos (attached to the AC) in question as "contrary" yet provides no explanation as to what is contrary. Motion at 9.

The Second Circuit has found that the "The owner of a copyright has the exclusive right to—or to license others to—reproduce, perform publicly, *display* publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir.2010) (citing 17 U.S.C. § 106). "A party who violates the exclusive rights of the copyright owner is an infringer, liable for damages pursuant to 17 U.S.C. § 504." *Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610, 616 (S.D.N.Y.2013). Plaintiffs satisfy all these components warranting that the Court deny the Motion.

## II.  BUZZFEED HAS FAILED TO SUSTAIN ITS BURDEN OF PROOF FOR ANY FAIR USE FACTOR

Buzzfeed ignores the overwhelming precedent that a "fair use" defense is most frequently determined at the summary judgment stage after conclusion of fact discovery. *See, e.g.*, *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006). Successful motions to dismiss based on fair use are a rare exception, not the rule. *See BWP Media USA, Inc. v. Gossip Cop Media, LLC*, 87 F. Supp.

5

3d 499, 505 (S.D.N.Y. 2015) ("dearth of cases granting such a motion"). BuzzFeed's conclusory fair use claim self-servingly fails to go any deeper than the first fair use factor. What little substance BuzzFeed offers is predicated on an incomplete, meritless analysis. A complete analysis shows that not one fair use factor favors BuzzFeed; therefore, the Motion must be denied for BuzzFeed's failure to sustain its burden, even under a summary judgment standard. Additionally, while BuzzFeed predicates its Motion on fair use, it inexplicably nests two unrelated defenses (absence of infringing activity and existence of a license) under fair use. Plaintiffs dispose of "fair use" before moving to equally flawed theories for dismissal.

The Copyright Act provides a photographer the exclusive right to control and authorize reproduction and distribution of copies of copyrighted work under 17 U.S.C. § 106, giving her, among other things, an incentive to create and ability to profit from her work. *Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 557 (1985).

In determining fair use, four (4) non-exclusive factors must be considered: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107; see also *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994). No single factor is dispositive; instead, a full analysis must be conducted on a "case-by-case" basis with all factors considered not "in isolation from one another … [but with] the results weighed together, in light of the purposes of copyright." *Id*. at 578.

Despite this, BuzzFeed avoids a complete analysis relying on "[w]here key statutory factors weigh in favor of dismissal, courts have held that analysis of the remaining factors is not necessary." Motion at 10. To this end, BuzzFeed cites *Ringgold v. Black Entm't Television, Inc.*,

6

126 F.3d 70, 75 (2d Cir. 1997). Problematically, this portion of *Ringgold* analyzes the threshold for actionable infringement based on *de minimis* use, a standard distinct from fair use, which is discussed elsewhere in the ruling and considers all four fair use factors with no mention of the court's ability to abbreviate its fair use analysis based on the relative strength of any one factor. Moreover, *Ringgold* is an appeal to the Second Circuit based on a Rule 56 Motion, not a 12(b)(6) Motion. BuzzFeed's premature, conclusory fair use defense relies on an incomplete analysis, focusing exclusively on the first fair use factor. In a complete analysis, not one factor favors BuzzFeed. The Motion must be denied.

### A.   BuzzFeed's Use of Plaintiffs' Photos Are Not Transformative Under the First Fair Use Factor And BuzzFeed Fares No Better Under Any Other Fair Use Factor.

Without merit, BuzzFeed asserts that because it used Plaintiffs' photos as a means to "deliver news to the public" along with commentary on that "news," it triumphs on transformativeness to such an extent the Court need not consider the greater fair use questions. Motion at 10-11. However, BuzzFeed's uses are insufficiently transformative to clear the character and purpose hurdle, let alone negate the need to conduct a full fair use analysis.

While news reporting is a recognized under fair use, it was never intended as an unlimited carve-out. *See, e.g.*, *Harper & Row* at 561 ("The fact that an article is arguably 'news' and therefore a productive use is simply one factor in a fair use analysis.")(internal quotation omitted); *see also Iowa State Univ. Research Found., Inc. v. Am. Broad. Companies, Inc.*, 621 F.2d 57, 61 (2d Cir.1980)(fair use doctrine not a license for corporate theft empowering a court to ignore a copyright whenever underlying work contains material of possible public importance); see also *BWP Media*, n.6 ("[n]ewsworthy contents will rarely justify unlicensed reproduction; were it otherwise, photojournalists would be unable to license photos, and would effectively be out of a job."). In other words, newsworthiness of an image is neither a

determinative fair use factor nor a blanket exception within the first fair use factor.

To support its flawed position, BuzzFeed misapplies *Swatch Group Mgt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73 (2d Cir. 2014), a case distinguishable from the case at bar and considered an "unusual" outlier. *Swatch* at 85. *Swatch* eschewed a traditional fair use inquiry for a truncated two-prong approach, noting such an "unusual" finding was necessary where the otherwise infringing use: (1) was "the only valid way to precisely report" the issue (i.e. no other way to disseminate the information); and (2) it caused no harm to the plaintiff because the plaintiff had **not** sought profit from the protected work. *Id* at 77. (emphasis added). While BuzzFeed offers no reason why *Swatch*'s qualified holding applies here, short-circuiting a traditional fair use analysis in favor of a *Swatch*-style end-run is unjustified because: (1) BuzzFeed had numerous alternatives to report the work of black photojournalists covering the Protests that did not involve stealing their work, most notably by licensing the photographers' work; and (2) BuzzFeed's use of the photos harmed Plaintiffs because they are professional photojournalists who earn a living from licensing photos. Even applying *Swatch*, BuzzFeed fails to advance why a full fair use analysis is unnecessary.

BuzzFeed follows this by again misapplying *Ringgold*, failing to note that, in conducting a full fair use analysis, *Ringgold* found that "in no sense is the defendants' use [of plaintiff's copyrighted work] transformative." *Ringgold at* 78. Instead, BuzzFeed cites dicta wherein the *Ringgold* court opines in passing about a somewhat analogous instance that might beget different results. Motion at 11 and *Ringgold* at 79. But even there, the court notes its hypothetical is hardly "conclusive" and could just as easily go the other way depending on the facts at hand. *Ringgold* FN 11. BuzzFeed fails to show why this case applies. Plaintiffs are photojournalists capturing photographs for a living, often of newsworthy events. But the inherent newsworthiness of

8

Plaintiffs' photos is not, in itself, a sufficiently transformative factor. This case requires full analysis of all fair use factors, not just one.

A proper assessment of the transformative nature of a use under the **first subfactor in a character and purpose analysis** considers "whether the new work merely 'supersede[s] the objects' of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. 569, 579.[4] Second Circuit courts have consistently held that using an image "for precisely the same reason it was created does *not* support a finding that [the use was transformative and thus] the nature and purpose of the use was fair," *BWP Media* at 407 (emphasis added), and that the "use of copyrighted material that merely repackages or republishes the original is unlikely to be deemed a fair use." *Fox News Network, LLC v. Tveyes, Inc.*, 883 F.3d 169, 177 (2d Cir. 2018) *See also Barcroft Media* at *6:

> [Defendant]'s articles did not comment on, criticize, or report news about the Images themselves; instead, they used the Images as illustrative aids because they depicted the subjects described in its articles. [Defendant]'s argument, if accepted, would eliminate copyright protection any time a copyrighted photograph was used in conjunction with a news story about the subject of that photograph. That is plainly not the law.

BuzzFeed conclusively states that transformativeness exists because Plaintiffs' photos "are the subject of the story they accompany." *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 580 (S.D.N.Y. 2020), Motion at 11. While *Walsh* found transformativeness due to the

---

[4] "...a news report about a video that has gone viral on the Internet might fairly display a screenshot or clip from that video to illustrate what all the fuss is about. *See, e.g.*, *Konangataa v. Am. Broadcasting companies, Inc.*, No. 16-CV-7382 (LAK), 2017 WL 2684067, 1 (S.D.N.Y. June 21, 2017). Similarly, a depiction of a controversial [image] might fairly accompany a work of commentary or criticism about the artistic merit or appropriateness of the [image]. *See, e.g.*, *Nunez v. Caribbean Int'l News Corp.*, 235 F.3d 18, 25 (1st Cir. 2000). In each such, the copyrighted work is itself the subject of the story, transforming the function of the work in the new context." *Barcroft Media, Ltd. v. Coed Media Grp., LLC*, No. 16-CV-7634 (JMF), 2017 WL 5032993, *2 (S.D.N.Y. Nov. 2, 2017).

plaintiff's photo being used "for an entirely different purpose than originally intended" (*Walsh at* 581), here, however, Plaintiffs' individual photos were <u>not</u> the subject of the BuzzFeed Post, which fails to discuss anything specific about any one photo, even referring to the photos as a "list" at one point Ex. A to AC. Indeed, any Plaintiff's photo could be deleted or swapped from the Post for another photo of the Protests and not affect any other aspect of the Post. Dump trucking a collection of photos is antithetical to transformativeness. *See Id.* at 580-581.

BuzzFeed misrepresents the premise of the recently decided *Boesen v. United Sports Publications, Ltd*., No. 20CV1552ARRSIL, 2020 WL 6393010, at *2 (E.D.N.Y. Nov. 2, 2020), claiming it was analogous to this case because there, the court found fair use when an "image of a professional tennis player on a public Instagram account [was] embedded online." Motion at 12. But BuzzFeed conveniently ignores the lynchpin of *Boesen*: that the tennis player used the photo in question to announce her retirement in a post to her Instagram account; therefore, that photo, as shown alongside the Instagram post's text, was quite literally *the* story. "But for [the tennis player's] choice to include the photograph in her Instagram retirement announcement, it would make no sense as 'an illustrative device' in defendant's article.  Therefore, defendant did not use the work for the precise reason it was created, but transformed the function of the work in a new context. This distinction makes all the difference." *Boesen* at *5.

BuzzFeed's use of Plaintiffs' Instagram photos did not recontextualize them, it merely used them to illustrate a post purporting to display photos taken by black photographers during the Protests. In other words, BuzzFeed used the photos for exactly the same purpose for which Plaintiffs intended: to show scenes from a critical moment in American history where the pain and frustration of black Americans boiled to the surface, as seen from the perspective of black American photographers. This repackaging is evident in the Post's headline ("17 Powerful

Pictures Of The Protests Through The Eyes Of Black Photographers") to its thesis statement ("BuzzFeed News has brought together a collection of 17 black photojournalists who are on the front lines of [the 2020 BLM] protests, providing raw and unfiltered perspectives of these events as they unfold in real time"). Ex. A to AC. However, nothing highlights the fidelity better than the Post's lead quote, in which another nonparty photographer states: "I want to make sure the stories of my fellow black brothers and sisters are accurately represented." AC Ex. A.

Had BuzzFeed's use added value by treating the photos as raw material "in the creation of new information, new aesthetics, new insights and understandings" its use may have been transformative. S*ee Castle Rock Ent., Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 142 (2d Cir. 1998). But, because BuzzFeed does not comment on, criticize, or report news about the specific photos themselves, there is no purpose to its display of the photos beyond generically pointing out that they exist (here, look!), and this "is not new information or insight that amounts to a transformative use." *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 532 (S.D.N.Y. 2018) ("Were this purpose sufficient to invoke a presumption of fair use, nearly every use of a photograph in a news article could be considered 'transformative'"). For these reasons, BuzzFeed's use cannot be excused as transformative and this subfactor strongly favors Plaintiffs.

The **second subfactor in a character and purpose analysis** looks at the commerciality of the uses, with the distinction focused on "not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the material without paying the customary price." *Harper & Row* at 562. BuzzFeed is a for profit online publisher that generates revenue from advertisements placed within posts it publishes, such as the one in question. Ex. A of AC. Therefore, BuzzFeed profited from displaying Plaintiffs' photos without compensating them and this subfactor favors Plaintiffs.

11

The **third subfactor in a character and purpose analysis** considers the propriety of a defendant's conduct, generally finding bad faith where the use "had not merely the incidental effect but the intended purpose of supplanting the copyright holder's commercially valuable right[s]." *Harper and Row* at 562. The Second Circuit considers a defendant's knowledge of the unauthorized nature of the use and the existing potential for the defendant to have properly acquired the copyrighted material. *See NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 478 (2d Cir. 2004) (bad faith based on defendant's awareness of a document's unauthorized procurement while possibility existed that same info contained within document could have been acquired legitimately by paying requisite fee). BuzzFeed admitted it knew better than to embed Plaintiffs photos without permission when it updated the Post to include an apology admission, noting the embedding "did not meet our editorial standards regarding photo permissions." Ex. A to AC. And given its attempts to obtain post-facto licenses from Plaintiffs, the likelihood clearly existed for BuzzFeed to have legitimately acquired licenses to the photos. *Id*. Accordingly, BuzzFeed acted in bad faith by displaying Plaintiffs' photos and therefore this subfactor and all fair use subfactors of the first factor lean heavily in Plaintiffs' favor.

The **second fair use factor** offers greater protection to work that possesses a high creative/expressive nature, as such work is "closer to the core of copyright protection than others." *Campbell*, 510 U.S. 569, 586. Nevertheless, the Second Circuit favors finding creative expression within documentary images because, "a photographer's efforts to create an aesthetically attractive, technically competent photograph […] have been held to be plainly creative expressions." *BWP Media* at 408.

Here, while Plaintiffs' photos are documentary images, evidenced by Plaintiffs' exercise of a high degree of technical skill and aesthetic judgment in capturing the image and in editorial

process under challenging conditions. Within each photo, artistry and empathy co-exist alongside the informational elements, confirming that they are not the result of a random shutter click by some kid with an iPhone. Each photo tells a story of a particular place and moment in time specific to the professional photographer who captured it. Because BuzzFeed used photos imbued with significant creative expression, the second fair use factor favors Plaintiffs.

The **third fair use factor** considers whether "the amount and substantiality of the portion used [is reasonable] in relation to the copyrighted work as a whole," 17 U.S.C. § 107(3). Courts look at the quantitative and quantitative aspects of the copy in relation to the original, and generally favor plaintiff/creators when a "significant percentage of the copyrighted work" was used, or "where the portion used is 'essentially the heart' of the copyrighted work." *NXIVM* at 480. Where the purpose of defendant's use is precisely the same as plaintiff's in licensing to third-parties, "whether the amount used was reasonable in relation to the purpose of the copying must necessarily be answered in the negative." *BWP Media* at 409 (internal quotations omitted).

Here, BuzzFeed displayed each Plaintiff's photo from their Instagram account in its 100% entirety. Because it used each photo as an example of the photographer's work depicting the 2020 BLM protests, BuzzFeed used each photo for exactly the same purpose for which each Plaintiff could have licensed those or similar photos to third parties – and in some cases, did.[5] In fact, in a separate post, BuzzFeed paid one Plaintiff for a limited license to use the very same photo it used here. Thus, the third fair use factor of "amount and substantiality" favors Plaintiffs.

The **fourth fair use factor** considers the negative effect a defendant's use has on the current and potential market for the work, including whether "unrestricted and widespread conduct of the sort engaged in by the defendant … would result in substantially adverse impact

---

[5] Evidence will show that some Plaintiffs did indeed license their photos that were used in the post.

on the potential market for the original." *Campbell* at 590 (citations omitted). *See Cariou v. Prince,* 714 F.3d 694, 708 (2d Cir.2013)("We have made clear that our concern is not whether the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use usurps the market of the original work."). The market has been usurped where a defendant "use[s] [a] photo in exactly the same manner … for which the plaintiff routinely licenses out its photos." *BWP Media* at 410.

Here, Plaintiffs are professional photojournalists who regularly license their photos, while BuzzFeed is an online media publisher that regularly licenses photos for its posts. The fact that BuzzFeed did not license the photos used in this Post deprived each Plaintiff of licensing income they otherwise would have received. In the aggregate, should publishers like BuzzFeed be permitted to engage in widespread embedding of photos from Instagram for free rather than paying the photographer a licensing fee, "the market for such images would diminish correspondingly … and there would be little or no reason to pay for Plaintiff's works." *Barcroft Media* at *8. The fourth fair use factor related to impact on the market heavily favors Plaintiffs.

In sum, the four fair use factors, taken together, demonstrate that BuzzFeed's fair use defense fails. Plaintiffs have unequivocally shown that no blanket fair use exception exists for "news reporting" and that only a complete fair use analysis of all four factors will suffice. Not one factor favors BuzzFeed. Excusing BuzzFeed's display of Plaintiffs' photos on its post as an example of transformative fair use would promote the wholesale circumvention of copyright law.

**B. BuzzFeed Embedded Photos That Are Subject to the Copyright Act and the So-called "Server Test" is a Legal Fiction Not Recognized by the Second Circuit.**

BuzzFeed argues, with no legal or factual basis, that embedding copyrighted photos from Instagram is not copyright infringement and relies on the legal fiction known as the so-called

14

"server test," which is not precedent in the Second Circuit.[6] BuzzFeed wrongly conflates a hyperlink (text, that if clicked, sends the viewer to a third-party website) with the display right of an actual photograph on Instagram via embedding. *See* AC at ¶¶81-82. Plaintiffs' photos are displayed on each of Plaintiffs' respective Instagram accounts and when unique html embed code (that causes the display of the photo) is cut and pasted into the backend of the BuzzFeed's website for the Post, the photos are simultaneously displayed within the Post. Id. Citing non-controlling law from the Ninth Circuit, BuzzFeed misapplies the "server test" as a doctrine related to fair use.  Why would BuzzFeed need to embed a photo if it were relying on fair use, but instead simply right click, save the photo and upload the photo directly into the Post? This factual dispute is not appropriate for this Motion.

Putting the disconnect aside, outside of the Ninth Circuit, however, "the Server Test has not been widely adopted." *Goldman v. Breitbart News Network, LLC*, 302 F. Supp. 3d 585, 591 (S.D.N.Y. 2018). At least four courts in this District have discussed the Server Test, yet none have chosen to eclipse a copyright holder's display right by adopting it. *Id*. BuzzFeed also misapplies *Capitol Records* without citing the actual ruling by cherry-picking a passing reference to another case. *Capitol Records* never applied the Server Test or ruled that Defendants' conduct was non-infringing based on where the digital file was hosted. Rather, it embraced the premise that, "[t]he copyright owner also has the exclusive right, 'in the case of ... pictorial [and] graphic ... works[,] ... to display the copyrighted work publicly.' 17 U.S.C. § 106(5). Public display includes 'show[ing] a copy of [a work], either directly or by means of a film, slide, television image, or any other device or process.' Id. § 101." *Capitol Records, LLC v. ReDigi Inc.*, 934 F.

---

[6] The Server Test is the modern day version of the "Gingerbread Man:" "Run, run as fast as you can! You can't catch me. I'm the Gingerbread Man!"    See *The Gingerbread Man*, St. Nicholas Magazine, May 1875.

Supp. 2d 640, 652 (S.D.N.Y. 2013), aff'd, 910 F.3d 649 (2d Cir. 2018).

Most importantly, nowhere in the plain textual reading of the Copyright Act does it mention "possession of work" – contrary to the "Server Test" – "as a prerequisite for infringement." *Goldman at* 592 (Plain language of the Copyright Act, the legislative history, and subsequent Supreme Court rulings provide no basis for a rule that requires the physical location or possession of an image to determine "display" of a photo within meaning of Copyright Act). As *Goldman* found, neither "the text or purpose of the Copyright Act suggest[s] that physical possession of an image is a necessary element to its display for purposes of the Act." Id. at 594.

Based on a plain reading of the Copyright Act, BuzzFeed's argument fails to shows why it prevails under the "server test," disfavored in this District and not the law of this Circuit.

### C. Instagram Never Granted Licenses to BuzzFeed for Plaintiffs' Copyrighted Photos & Neither Did Plaintiffs.

BuzzFeed again takes liberty with both the facts and law applicable to whether "fair use" applies to whether Instagram granted BuzzFeed licenses to each of Plaintiffs' photos. BuzzFeed makes a factual leap in logic by asserting, with no case law and no evidence, that just because Plaintiffs placed their photos on their respective public Instagram accounts in "public" mode somehow means that each Plaintiff explicitly and expressly consented to BuzzFeed being granted a license. The opposite is true as alleged in the AC. There is no evidence that Instagram *exercised its option* to grant BuzzFeed a license. BuzzFeed also misquotes *Sinclair*. In ruling on a motion for reconsideration, the *Sinclair* Court held:

> By agreeing to Instagram's Terms of Use, Plaintiff authorized Instagram to grant API users [...] a sublicense to embed her public Instagram content, as set forth in Instagram's Platform Policy.1 (Opinion at 4.)
>
> The Court does, however, revise the Opinion by finding that the pleadings contain insufficient evidence that Instagram exercised its right to grant a sublicense to Mashable. As evidence of its purported sublicense, Mashable presented Instagram's Platform Policy,

16

which states that Instagram "provide[s] the Instagram APIs to help broadcasters and publishers discover content, get digital rights to media, and share media using web embeds." (Platform Policy, Preamble.) The Court previously concluded that this term of the Platform Policy granted Mashable a sublicense to use the API to embed the Photograph in its website.

In reaching this conclusion, the Court did not give full force to the requirement that a license must convey the licensor's "**explicit consent**" to use a copyrighted work… …

Therefore, "[a]lthough courts may find a license on a motion to dismiss where the terms of the governing contracts are clear," **[Instagram's] Platform Policy's terms are insufficiently clear to warrant dismissal of Plaintiff's claims at this stage of litigation**.

*Sinclair v. Ziff Davis, LLC,* No. 18-CV-790 (KMW), 2020 WL 3450136, at *1 (S.D.N.Y. June 24, 2020).

Also, Plaintiffs generally alleged that BuzzFeed violated Instagram's Platform Policy,[7] noting the following policies BuzzFeed violated, which are evidence of infringement:

- Don't use the Instagram Platform to simply display User Content, import or backup content, or manage Instagram relationships, without our prior permission. (General Terms, A16)
- Comply with all applicable laws or regulations. Don't provide or promote content that violates any rights of any person, including but not limited to intellectual property rights…. (General Terms, A35)
- …Please note that User Content is owned by users and not by Instagram. **All rights not expressly granted to you [BuzzFeed] are reserved by Instagram.** (Things You Should Know, D8)
- You [BuzzFeed] represent and warrant that you own or **have secured all rights necessary to display**, distribute and deliver all content in your app or website. (Things You Should Know, D9)
- You [BuzzFeed] represent and warrant that you satisfy all licensing, reporting, and payout obligations to third parties in connection with your app or website. (Things You Should Know, D10)

More problematic than its violations of Instagram's policies is BuzzFeed's failure to show any law or facts showing BuzzFeed met the "requirement that a license must convey the

---

[7] https://developers.facebook.com/docs/development/terms-and-policies/legacy-instagram-platform-policy (Last visited 2/17/21)(emphasis added).

17

licensor's explicit consent" to use a copyrighted work. *Id*. As BuzzFeed is aware and as alleged in the AC at ¶85, Instagram, through its parent Facebook, went on the record in open court in a hearing in this District before Judge Barbara Moses, stating that "**Facebook [owner of Instagram] is free to, under its policies as Judge Wood noted, to grant such sublicenses, but they did not do that. And they did not do that for anybody and the *anybody* would, of course, then include Mashable in this situation.**" *Sinclair v. Mashable,* Inc., No. 18-cv-790, Tr. at 8:24-9:4 (Dec. 1. 2020). The Court can replace "Mashable" with BuzzFeed here. Because Instagram never granted BuzzFeed a license to any Plaintiffs' photos on Instagram even though it had the option to do so, BuzzFeed's license argument is baseless. Which BuzzFeed admits because on June 11, 2020, it wrote: "This [BuzzFeed] post has been updated and several photographs were removed because the original list did not meet our editorial standards regarding photo permissions." *See* Ex. A to AC. Why? Because BuzzFeed ignored its obligation to satisfy licensing rights in connection with Instagram user content embedded on its website.

Ignoring the foregoing, BuzzFeed also attempts an implied license defense. Motion at 13-14. But, consistent with numerous misrepresentations here, BuzzFeed misleadingly truncates the *McGucken* holding, its support for this position. The full cite supports Plaintiffs:

> [a]n implied license can *only* exist where an author creates a copyrighted work with knowledge and intent that the work would be used by another for a specific purpose" (citing *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.,* 211
F.3d  21, 25 (2d Cir. 2000))). While the Court acknowledges that it may be possible to read Instagram's various terms and policies to grant a sublicense to embedders, the Court's role on a Rule 12(b)(6) motion is to "draw all reasonable inferences in Plaintiff's favor." *Faber*, 648 F.3d at 104. Given the limited review permitted at this stage, the Court cannot find that Defendant [Newsweek] acted pursuant to a sublicense from Instagram.

*McGucken v. Newsweek LLC*, 464 F.Supp.3d 594, 603–04 (S.D.N.Y. 2020). BuzzFeed's argument must be disregarded the same way: there is no evidence that BuzzFeed acted pursuant to an implied license from Instagram or Plaintiffs especially given Instagram's declaration in

court regarding *this very* issue; further, both the *McGucken* court and the *Sinclair* court rejected BuzzFeed's position. Lastly, BuzzFeed is not entitled to fees and costs, but rather is itself guilty of meritless conduct by making arguments with no legal or factual basis. Motion at 15.

## III. SEVERANCE WOULD BE INEFFICIENT AS BUZZFEED SUFFERS NO UNFAIR PREJUDICE BY DEFENDING THIS CASE UNDER ONE DOCKET

BuzzFeed also fails to submit facts or law to support severance of the 6 Plaintiffs into 6 separate cases. Plaintiffs' claims share more commonalities than differences as they elected to join together and file this case as a united front based on a common wrong in the one Post. As the Supreme Court has held, "joinder of claims, parties and remedies is strongly encouraged" and "the impulse is toward the broadest possible scope of action consistent with fairness to the parties." *United Mine Workers v. Gibbs*, 383 U.S. 715, 724, (1966). Severance is a rare and exceptional remedy. While "[t]he Federal courts view severance as a procedural device to be employed only in exceptional circumstances," *Oram v. SoulCycle LLC,* 979 F.Supp.2d 498, 503 (S.D.N.Y.2013); *Agnesini*, 275 F.R.D. at 458 (same); *Cia. Embotelladora del Pacifico v. Pepsi Cola Co.*, 256 F.R.D. 131, 133 (S.D.N.Y.2009) ("[T]he joinder of claims is 'strongly encouraged' and severance should generally be granted only in 'exceptional circumstances.' *N. Jersey Media Grp. Inc. v. Fox News Network, LLC*, 312 F.R.D. 111, 114 (S.D.N.Y. 2015). BuzzFeed fails to note that *N. Jersey Media Grp. Inc.* is a case where severance was warranted because it dealt with unrelated counterclaims for distinct transactions which could confuse the jury, preclude settlements, waste judicial resources, require new documents and different witnesses, and could prejudice one or more of the parties. None of those factors are present here.

## A and B. Plaintiffs' Claims All Arise From the Same Listicle Post and Common Questions of Law and Fact Are Predominate.

"Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly,

severally, or in the alternative with respect to or **arising out of the same transaction,**

**occurrence, or series of transactions or occurrences;** and (B) any question of law or fact

common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). "[B]oth criteria must

be met for joinder to be proper under the plain language of Rule 20 [...] The first requirement is

satisfied if the court finds that the essential facts of the various claims are so logically connected

that considerations of judicial economy and fairness dictate that all the issues be resolved in one

lawsuit [...] The second requirement is satisfied if the court finds that there is substantial overlap

in questions of law or fact across the claims." See *Ardolf v. Weber,* 332 F.R.D. 467, 479

(S.D.N.Y. 2019). Also rule 20 reads in pertinent part:

> (3) Extent of Relief. Neither a plaintiff nor a defendant need be interested in obtaining or
> defending against all the relief demanded. The court may grant judgment to one or more
> plaintiffs according to their rights, and against one or more defendants according to their
> liabilities.

See Fed. R. Civ. P. 20.

In support of severance, BuzzFeed cites a case about wage/hour disputes arising out of

different Home Depot stores with more than 30 plaintiffs in 6 different states, and illogical,

unrelated transactions requiring separate analyses. *Costello v. Home Depot U.S.A., In*c., 888 F.

Supp. 2d 258, 264 (D. Conn. 2012). The claims against BuzzFeed are distinguishable and

opposite from *Home Depot U.S.A* the other cases it cites. *See e.g., Blackman v. Teespring, Inc.*,

No. 19-CV-01494-RS, 2019 WL 7832600, at *2 (N.D. Cal. July 12, 2019) (thousands of

copyrights and potentially thousands of infringing sales from 27 Plaintiffs over several years).

Plaintiffs' claims all arise from the same Buzzfeed Post published on the same day, that

infringed on all of Plaintiff's photos in the same way, by the same defendant, with each photo

embedded from Instagram, the same general source of the photos and purveyor of the same

mechanism that caused the photos to be displayed. Where each photo was captured (NYC, DC,

LA, Austin, St. Louis etc.) is not relevant for either Plaintiffs' claims or BuzzFeed's defenses. Liability (copyright infringement) is common to one Defendant, not multiple. The Post's content (the copy) has the same exact common language to each Plaintiff. The Copyright Act applies to all Plaintiffs. All witnesses will be the same. All documents that BuzzFeed produces in discovery will generally be the same for each. BuzzFeed's admission that the Post "did not meet our editorial standards regarding photo permissions" applies to all Plaintiffs. BuzzFeed has raised defenses that are common for each Plaintiff. Aside from whether certain Plaintiffs' photos are factually deemed as "published" pursuant to the Copyright Act (which all Plaintiffs allege and several of the registrations of have been supplemented to reflect (see 17 § 411(b)(1) discussion *supra* at 3) the only difference may be the amount of damages each Plaintiff could be awarded by a jury. Similar to a car wreck case where multiple passengers and a driver get injured in the same car and each may be awarded different damages depending on their injuries, the BuzzFeed Post is akin to the same car and each Plaintiff having different damages. Therefore, there is likely only one element that could be different for each Plaintiffs' claims: damages. However, Plaintiffs intend to pursue the maximum damages available under the law.

Joinder is proper here. Severance is not. Accordingly, Plaintiffs satisfy both factors of Fed. R. Civ. P. 20 because all Plaintiffs had their photos infringed in the same transaction and all share multiple common questions of law and fact.

### C. Judicial Economy and Common Evidence Justify Allowing Joinder of Plaintiffs

Based on the facts and law of this case, this is no worse an example of judicial inefficiency than severing Plaintiffs' 8 claims into 6 separate cases. To demonstrate judicial inefficiency, BuzzFeed relies on a putative class action case that involved alleged copyright infringements of millions of copyright holders (anyone in the world at any time that has or will

have a copyright!) and was not severed but class certification was denied. See *Football Ass'n Premier League Ltd. v. YouTube, Inc.,* 297 F.R.D. 64, 65 (S.D.N.Y. 2013) (a Frankenstein monster posing as a copyright infringement class action). In this case, the universe of alleged infringements is limited to a single document (the Post) and the sole defendant has defenses to liability common to each of the 6 plaintiffs. While damages rely on individual inquiries of each Plaintiff, this is no different than multiple people being hurt in a single car wreck. Liability rests on all the same witnesses and documents while damages will vary based on the same factors (licensing fees) and other willful/reckless infringement factors that apply uniformly across Plaintiffs. In sum, there are far more similarities in fact and law then there are differences.

### D. BuzzFeed Suffers No Unfair Prejudice Justifying Severance

BuzzFeed provides no evidence of actual unfair prejudice if the joined Plaintiffs remained in the case, only speculation. There is nothing confusing about evidence related to 6 photographers whose copyrighted photos were infringed by BuzzFeed in a single Post in the same manner. While it may be an inconvenient truth that BuzzFeed suffers prejudice from being called out for not compensating black photographers who risked their lives to capture the 2020 BLM protests, BuzzFeed provides no case law as to why it is *unfairly* prejudiced by these unflattering facts. In every lawsuit, the party accused of wrongdoing is prejudiced by adverse facts. This case is no different. BuzzFeed cannot demand 6 different trials because it fears the consequences of its singular wrongful act. BuzzFeed may more properly seek relief under FRE 403 to balance whether any one specific piece of evidence or fact causes *unfair* prejudice.

## IV. THE AMENDED COMPLAINT CONTAINS ONLY MATERIAL AND PERTINENT ALLEGATIONS

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter." "[W]hether to grant such a motion is within the district court's discretion." *Lynch v. Southampton Animal Found.*, 278 F.R.D. 55, 63 (2011). "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 402 F. Supp. 2d 434, 437 (S.D.N.Y. 2005). "Scandalous generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *United States ex rel. Raffington v. Bon Secours Health Sys.*, 285 F. Supp. 3d 759, 773 (S.D.N.Y. 2018).

Motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the dispute. *Mikropul Corp. v. Desimone Chaplin–Airtech, Inc.*, 599 F.Supp. 940, 945 (S.D.N.Y. 1984). "[T]o prevail on a Rule 12(f) motion to strike, the movant (BuzzFeed) must show that the allegations are immaterial and impertinent and it is movant's burden to show that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001). "[E]ven allegations that 'may not pass Rule 11 scrutiny at a later stage in the litigation' will not be stricken if they have some 'possible bearing on the subject matter of the plaintiff's claim.'" *Lynch*, 278 F.R.D. at 66. Defendants are given "ample opportunity after discovery to show that these allegations are baseless or irrelevant" to a plaintiff's claims. *Id*. "[T]he jury will only see such allegations if the Court ultimately determines that they are relevant and admissible under the Federal Rules of Evidence." *Id*. at 67.

Without discovery, a motion to strike here is premature as there is no allegation in the AC

23

that clearly falls into the factors from *Roe*. Plaintiffs' AC contains only material, relevant, and pertinent allegations against BuzzFeed that are supported by competent evidence for Plaintiffs' claims. Should BuzzFeed be permitted to whitewash and strike the fact that it published a post about the work of black photographers covering the 2020 BLM protests without paying those photographers for their work? No material risk exists of the AC leading to unnecessary forays into immaterial or salacious matters because Plaintiffs' biographies, which include their race and circumstances under which the photos were captured, are indispensable allegations of fact.

Despite allegations of a pockmarked history of infringing behavior and publication of unlicensed photos, BuzzFeed objects to evidence of prior lawsuits, which are highly relevant as those judgments and verdicts are admissible evidence to support a finding of willfulness by a jury. See, e.g., *Stevens v. Aeonian Press, Inc.*, 2002 WL 31387224, at 3 (S.D.N.Y. Oct. 23, 2002)(finding willful infringement based on evidence including "records of other lawsuits filed against Defendants for similar activities, and a settlement entered into with respect to one such action"); *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (Permitting admissible evidence of docket sheets in six copyright cases brought within the last three years against Defendant, with showing that Defendant regularly infringed others' copyrights and defendant appears to have infringed plaintiff's copyright willfully).

BuzzFeed also complains about reference to Rule 68 judgments that it has agreed to have entered against it. "The critical feature of [Rule 68] is that the offer be one that allows judgment to be taken *against the defendant for both the damages caused by the challenged conduct and the costs that accrued*" (emphasis in original). *Marek v. Chesny*, 473 U.S. 1, 6 (1985). In *Mango v. Buzzfeed Inc.*, 970 F.3d 167 (2d Cir. 2020), the Second Circuit affirmed BuzzFeed's loss on the merits for altering copyright management info and admitting to copyright infringement.

24

BuzzFeed's argument also is meritless when it relies on the proposition that "paragraphs in a complaint that are either based on, or rely on, complaints in other actions that have been dismissed, settled, or otherwise not resolved, are, as a matter of law" should be struck and flat out ignores that neither Rule 68 Offers of Judgment nor "consent judgments" fit into any of those categories. *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 403 (S.D.N.Y. 2009), aff'd, 387 F. App'x 72 (2d Cir. 2010). A 12(b)(6) Motion is not the appropriate venue to make an evidentiary ruling such as striking evidence of being a repeat and serial copyright infringer. BuzzFeed also wrongfully moves to strike allegations about its website traffic and how it generates revenue. AC at ¶¶ 64-66. These are material allegations and Plaintiffs' will be entitled to discover actual revenues and relevant information regarding the Post.

Lastly, BuzzFeed objects to an admission of its lawyer (identified as "BuzzFeed's counsel") making a public comment (which amounts to an admission against party interest) that photographers need to read Instagram's terms, despite BuzzFeed's argument that it is not bound by those same terms. AC at ¶71. This allegation contains discoverable evidence of the claims.

## CONCLUSION

Defendant BuzzFeed's Motion fails to provide any credible support in fact or law to maintain a fair use defense, that it obtained a license, that the so-called "server test" applies, that severing the 6 Plaintiffs is unfairly prejudices it, or that any allegations need to be struck. Plaintiffs pray the Court deny the Motion in its entirety and all other relief. Alternatively, should the Court grant some or all of the Motion, Plaintiffs seek leave to amend the AC.

Dated: February 26, 2021

 /s/James Bartolomei

DUNCAN FIRM, P.A.
809 W. 3rd Street
Little Rock, Arkansas 72201
501-228-7600 phone
501-228-0415 fax
james@duncanfirm.com

and

Bryan D. Hoben, Esq.
HOBEN LAW
1112 Main Street
Peekskill, NY 10566
347-855-4008
914-992-7135 fax
bryan@hobenlaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of February 2021, a true and correct copy of the foregoing was filed with the Court through the ECF-CM electronic filing system, which will automatically serve electronic notice of the same on the counsel of record and hard copies were delivered to the court under its rule.

<u>/s/ James Bartolomei</u>

James Bartolomei, Esq.

27