USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 9/30/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
ALEXIS HUNLEY ET AL.,

                  **Plaintiffs,**

        -against-

BUZZFEED, INC.,

                  **Defendant.**

------------------------------------------------------------------ x

**1:20-CV-08844-ALC**

<u>Opinion and Order</u>

**ANDREW L. CARTER, JR., District Judge:**

    Plaintiffs Alexis Hunley ("Hunley"), Vanessa Charlot ("Charlot"), Dee Dwyer ("Dwyer"), Karisha "Kay" Hickman ("Hickman"), Anthony "Tony" Mobley ("Mobley"), and Montinique Monroe ("Monroe") (collectively, "Plaintiffs") bring this action for copyright infringement pursuant to 17 U.S.C. §§ 101 *et. seq.* (the "Copyright Act"), alleging that Defendant, BuzzFeed, Inc. ("Defendant" or "BuzzFeed") displays on its website photographs taken from each of Plaintiffs' Instagram accounts to generate profits and revenues. Plaintiffs seek statutory damages pursuant to 17 U.S.C. § 504(c) or, in the alternative, actual damages based on BuzzFeed's earnings resulting from the alleged infringement. Pending before the Court is Defendant's Motion to Dismiss Plaintiffs' Amended Complaint ("AC"), or in the Alternative, Motion to Sever the Amended Complaint and Strike Allegations. For the following reasons, BuzzFeed's motion is DENIED in its entirety.

## BACKGROUND

    Plaintiffs commenced this action on October 22, 2020. ECF No. 1. Following the death of George Floyd, each Plaintiff took frontline photographs of the ensuing May and June 2020

protests in major cities in the United States and registered the photographs with the United States Copyright Office. AC ¶¶ 16–17, 80, 99-104, Exs. B1-B2, C1-C2, D1-D2, E1-E2, F1-F2, G1-G2. Plaintiffs allege that BuzzFeed embedded and displayed at least one of each of their protest photographs from each of their Instagram accounts in an online post on the BuzzFeed News website entitled "17 Powerful Pictures of the Protests Through the Eyes of Black Photographers" (the "Post").[1] AC, Ex. A & AC ¶¶ 19, 75. BuzzFeed did not license the photographs from Plaintiff or Instagram[2] and admitted publicly its failure to obtain permission or consent to display the photographs. AC ¶¶ 72, 79, 90. Plaintiffs claim that BuzzFeed made the Post, dated June 3, 2020, to generate profits and deprive Plaintiffs of licensing opportunities. AC ¶¶ 19. BuzzFeed moved to dismiss this action on February 1, 2021. ECF No. 35-36. Plaintiffs opposed the motion on February 6, 2021. ECF No. 41. BuzzFeed replied on March 12, 2021. ECF No. 42. The Court considers the motion fully briefed.

**STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct

---

[1] The headline was later changed to "Here Are Powerful Pictures of the Protests Through the Eyes of Black Photographers." AC ¶¶ 75. At all times, the Post has been available at BuzzFeedNews.com.

[2] As Instagram account holders, Plaintiffs and BuzzFeed are subject to Instagram's Terms of Use, which stipulates that Instagram users retain ownership of their copyrighted photos and videos that they may post on their Instagram accounts but that Instagram is granted a nonexclusive license to the content the user posts, including copyrighted photos or videos. AC ¶¶ 83. This agreement gives Instagram the right to sublicense copyrighted photos and videos. AC ¶¶ 83. Additionally, according to the Instagram Platform Policy, Instagram embed users are not automatically granted a license, sublicense, or implied sublicense to freely embed or display the photos and videos of Instagram account holders absent confirmation that BuzzFeed received "all rights necessary to display the content of general Instagram users." AC ¶¶ 86 (citing Instagram Platform Policy generally); AC ¶¶ 88.

alleged." Id. (citing Twombly, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " Id. (quoting Twombly, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. See Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555); see also id. at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." Port Dock & Stone Corp. v. Oldcastle Northeast, Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court also may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Fair Use Defense

The Court will first address BuzzFeed's fair use defense. The Copyright Act, under which Plaintiff brings this suit, is intended "[t]o promote the Progress of Science and useful Arts," U.S. Const. art. I, § 8, cl. 8, "by granting authors a limited monopoly over (and thus the opportunity to profit from) the dissemination of their original works of authorship," Authors

3

Guild, Inc. v. HathiTrust, 755 F.3d 87, 95 (2d Cir. 2014). But there are also limits upon creators' control over their own works—in particular, "the doctrine of 'fair use,' which allows the public to draw upon copyrighted materials without the permission of the copyright holder in certain circumstances." Id. "[T]he fair use determination is an open-ended and context-sensitive inquiry," Cariou v. Prince, 714 F.3d 694, 705 (2d Cir. 2013). However, to sustain the potential future use(s) of artistic works, Congress has provided for four nonexclusive factors that inform whether a given use is fair:

> [T]he fair use of a copyrighted work . . . for purposes such as criticism, commentary, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work . . . is a fair use, the facts to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

"Fair use is an affirmative defense, and therefore Defendant bears the burden of showing that a given use is fair." Yang v. Mic Network, Inc., 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019) (quoting Authors Guild v. Google, Inc., 804 F.3d 202, 213 (2d Cir. 2015)). "Courts have granted motions to dismiss infringement claims based on a defendant's fair use defense when 'discovery would not provide any additional relevant information' and '[a]ll that is necessary for the court to make a determination as to fair use are the two [works] at issue.'" May v. Sony Music Entm't, 399 F. Supp. 3d 169, 188 (S.D.N.Y. 2019) (quoting Arrow Prods., Ltd. v. Weinstein Co., 44 F. Supp. 3d 359, 368 (S.D.N.Y. 2014)). However, as this Court has previously observed, "there is a

4

dearth of cases granting such a motion." BWP Media USA, Inc. v. Gossip Cop Media, LLC, 87 F. Supp. 3d 499, 505 (S.D.N.Y. 2015).

The heart of the fair use inquiry is the purpose and character of the use. Blanch v. Koons, 467 F.3d 244, 251 (2d Cir. 2006). The inquiry concerns the transformative nature of the work. Bill Graham Archives v. Dorling Kindersley Ltd., 448 F.3d 605, 608 (2d Cir. 2006). It also concerns whether the "use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). "The more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569, 569 (1994).

To determine whether the secondary use is transformative, the "question is whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." Bill Graham, 448 F.3d at 608 (quotation omitted); Authors Guild., 804 F.3d at 214 ("[A] transformative use is one that communicates something new and different from the original or expands its utility, thus serving copyright's overall objective of contributing to public knowledge."). A secondary use "can be transformative in function or purpose [even] without altering or actually adding to the original work." Swatch Grp. Mgmt. Servs. Ltd. v. Bloomberg L.P., 756 F.3d 73, 84 (2d Cir. 2014) (quotation omitted).

BuzzFeed argues that its use of the photos was transformative even though the photos were embedded from Plaintiff's Instagram accounts on BuzzFeedNews.com without modification. The original headline for the Post reads: "17 Powerful Pictures of the Protests Through the Eyes of Black Photographers." Directly below the headline is a quote from a BuzzFeed editor that says, "I want to make sure the stories of my fellow black brothers and

sisters are accurately represented." The article in the Post describes the protests sweeping the United States at that time following the killing of George Floyd. It stated as its purpose to bring together a collection of 17 black photojournalists to provide "raw and unfiltered perspectives of these events as they unfold in real time." The article then very briefly introduces two of the photojournalists and requests that readers follow the photographers on Instagram. The Instagram photos from photojournalists—including Plaintiffs and others—are then displayed throughout the rest of the Post.

Drawing all reasonable inferences in favor of Plaintiffs, the alleged use here is not transformative because the Post fails to alter the photographs with new expression, meaning, and message. See, e.g., Dhillon v. Does 1-10, No. 13 CV 1465, 2014 WL 722592, at *3-6 (N.D. Cal. Feb. 25, 2014) (use was transformative when picture was originally taken to depict plaintiff in a positive light, then used "as part of [defendant's] criticism of, and commentary on, the plaintiff's politics"). Unlike in *Dhillon*, BuzzFeed merely uses the photographs to identify the photojournalists and makes no modification to the copyrighted material after embedding the photos. The Post itself does not go beyond simply collecting photos and names of photojournalists. And it does not provide any altered expression or meaning to the allegedly infringed work beyond that for which it was originally created by the copyright holders. Nunez v. Caribbean Int'l News Corp., 235 F.3d 18, 23 (1st Cir. 2000) ("[B]y using the photographs in conjunction with editorial commentary," the copyrighted work transformed "into news—and not the mere newsworthiness of the works themselves."). At the motion to dismiss stage, drawing all reasonable inferences in Plaintiffs' favor, the Court concludes that BuzzFeed's alleged use of the photographs was not transformative. The first factor therefore weighs against fair use.

Because BuzzFeed failed to address the other three mandatory factors, it cannot sustain a fair use defense. Defendant—neither in its opening brief or reply—makes its case with respect to the other three mandatory factors. It is well-settled that in raising the fair use defense, the statutory factors may not "be treated in isolation, one from another . . . . [a]ll are to be explored, and the results weighed together, in light of the purposes of copyright." Campbell, 510 U.S. at 577–78 (1994). "[D]efendants bear the burden of proving that their use was fair . . . and they need not establish that each of the factors set forth in § 107 weighs in their favor" but all the factors must be addressed. Bloomberg L.P., 756 F.3d at 81 (citations omitted). For this reason, the Court finds that BuzzFeed has failed to state a fair use defense.

BuzzFeed raises two additional arguments.[3] However, these arguments are without merit. First, they appear to raise factual disputes that are not appropriate at this stage of the case. At the pleading stage, the Court accepts all factual allegations in the Amended Complaint as true. Second, the additional arguments do not clearly go to any of the four fair use factors set out by Congress. As mentioned *supra*, BuzzFeed is not entitled to a fair use defense at this stage where the first factor weighs against them and where they failed to address all relevant factors for the defense. Drawing all reasonable inferences in favor of Plaintiffs, the Court finds no factual or legal basis to conclude that BuzzFeed's use was fair based on these arguments.

Having determined that BuzzFeed has failed to establish a fair use defense at this stage, the Court denies BuzzFeed's motion to dismiss. The Court now turns to BuzzFeed's portion of the motion asking the Court to sever Plaintiffs from this action for misjoinder.

## II. Misjoinder

---

[3] (1) Embedded photographs cannot be the subject of copyright infringement claims, and (2) Plaintiffs granted BuzzFeed license to use their works when they placed the photographs on their public Instagram accounts.

7

Under Rule 20(a) of the Federal Rules of Civil Procedure, "[p]ersons may join in one action as plaintiffs if . . . they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." "Failure to satisfy either prerequisite for permissive joinder constitutes misjoinder of parties." Deskovic v. City of Peekskill, 673 F.Supp.2d 154, 159 (S.D.N.Y. 2009). While misjoinder "is not a ground for dismissing an action . . . the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. Plaintiffs bear the burden of demonstrating that their claims arise out of the same "transaction" or "occurrence" for Rule 20 purposes. Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A., 596 F.Supp.2d 821, 827 (S.D.N.Y.2008). However, "in assessing whether the requirements of [Rule 20] are met, courts must accept the factual allegations in a plaintiff's complaint as true." Deskovic, 673 F.Supp.2d at 159 (internal citations omitted). Courts in this district have used the Second Circuit's interpretation of Fed. R. Civ. P. 13(a)(l)(A)'s "transaction or occurrence" language as guidance in interpreting the Rule 20 requirement. Peterson v. Regina, 935 F.Supp.2d 628, 637 (S.D.N.Y. 2013); Kalie v. Bank of Am. Corp., 297 F.R.D. 552, 557 (S.D.N.Y. 2013). Consequently, district courts in this Circuit have adopted a "logical relationship" test in analyzing "transactions or occurrences" under Rule 20. Id. This test requires the court to "assess the logical relationship between the claims and determine whether 'the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit.'" Peterson, 935 F.Supp.2d at 637 (internal citations omitted).

Plaintiffs' assert essential facts that are almost all logically related among them. Plaintiffs bring claims based on the use of their photographs in the same BuzzFeedNews.com Post dated

June 3, 2020. Each Plaintiff has registered his or her photograph, all of which the same defendant, BuzzFeed, allegedly displayed on the same day without permission.

The Amended Complaint also makes abundantly clear that there are common questions of law and fact among Plaintiffs. Plaintiffs assert all the same factual allegations against the same defendant in support of their copyright claims. They also filed their opposition to the instant motion jointly making the exact same arguments.

Even if a joinder is proper, the Court may still sever at its discretion. Fed. R. Civ. P. 21; see also State of N.Y. v. Hendrickson Bros., 840 F.2d 1065, 1082 (2d Cir.1988) ("decision whether to grant a severance motion is committed to the sound discretion of the trial court"). However, Courts acknowledge that this is a procedural device to be employed "in exceptional circumstances," and the moving party bears the burden of demonstrating that "severance is required to avoid prejudice or confusion and to promote the ends of justice." Agnesini v. Doctor's Associates. Inc., 275 F.R.D. 456, 458 (S.D.N.Y. 2011) (internal quotations omitted). In addition to the considerations under Rule 20, a decision to sever under Rule 21 examines three supplementary factors: "whether settlement of the claims or judicial economy would be facilitated;" "whether prejudice would be avoided if severance were granted;" and "whether different witnesses and documentary proof are required for the separate claims ." Crown Cork & Seal Co. Master Ret. Trust v. Credit Suisse First Boston Corp., 288 F.R.D. 331, 332–33 (S.D.N.Y. 2013) (internal citations omitted). Given this early stage in the litigation, to promote judicial economy, and for purposes of streamlining discovery and possible settlement, the Court sees no compelling reason why BuzzFeed would face prejudice or confusion if BuzzFeed's severance request is denied. Therefore, the Court declines to sever any of the plaintiffs from this case.

For the reasons stated above, Defendant's motion to sever Plaintiffs is denied. The Court now turns to BuzzFeed's motion to strike certain allegations in the Amended Complaint.

### III. Motion to Strike Allegations

Under Rule 12(f) of the Federal Rules of Civil Procedure, "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." The motion must "state with particularity the grounds for seeking the order." Fed. R. Civ. P. 7(b)(1); see, e.g., Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 579 (2d Cir.1969) ("[T]he motion to strike was much too general in that it did not specify which parts of the . . . affidavit should be stricken and why . . . . [T]he motion to strike must be precise."). To prevail on a [Rule 12(f)] motion to strike, a party must demonstrate that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." Acco, Ltd. v. Rich Kids Jean Corp., No. 15 CIV. 7425 (JSR), 2016 WL 3144053, at *1 (S.D.N.Y. Apr. 11, 2016) (collecting cases). "[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing." *See Lipsky*, 551 F.2d at 893; see also Arias-Zeballos v. Tan, No. 06 CIV. 1268 (GEL), 2006 WL 3075528, at *9 (S.D.N.Y. Oct. 26, 2006) (describing motions to strike as "generally disfavored").

At this early stage in the case, the Court does not have a strong reason to tamper with the Complaint by striking the disputed allegations as impertinent, irrelevant, or immaterial. Lipsky, 551 F.2d at 893. It is too early in the litigation for anyone, including BuzzFeed, to know whether the disputed allegations would be admissible at trial or would have absolutely no bearing on the issues in the case. Id. ("Evidentiary questions . . . should especially be avoided at such a preliminary stage of the proceedings. Usually the questions of relevancy and admissibility in

general require the context of an ongoing and unfolding trial in which to be properly decided. And ordinarily a [court] should [not] decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone.") (citing cases); see also Garcia v. Ct. Emp. Project (Cases), No. 95 CIV. 2623 (CSH), 1995 WL 422266, at *2 (S.D.N.Y. July 17, 1995) (refusing to strike allegations that are "*potentially* relevant" to plaintiff's claim of discriminatory termination) (emphasis in original).

In addition, the Amended Complaint sets forth allegations that appear to "provide a better understanding of the claim for relief by providing background facts and thus are proper." Gierlinger v. Town of Brant, No. 13-CV-00370 AM, 2015 WL 3441125, at *1 (W.D.N.Y. May 28, 2015) (quoting Hoffman Motors Corp. v. Alfa Romeo S.P.A., 244 F.Supp. 70, 81–82 (S.D.N.Y. 1965)). "Matters should be stricken on the basis of impertinence only where the allegation bears no possible relation whatsoever to the subject matter of the litigation." AdvanceMe, Inc. v. Lenders Int'l, No. 11 CV 3624 VB, 2011 WL 6425488, at *2 (S.D.N.Y. Dec. 19, 2011) (quoting Wahlstrom v. Metro–North Commuter R.R. Co., No. 96-CV-3589 (PKL), 1996 WL 684211, at *2 (S.D.N.Y. Nov. 25, 1996). At this time, the Court is not convinced that BuzzFeed will suffer any prejudice if the disputed allegations remain in the Complaint. The Court therefore denies BuzzFeed's Motion to Strike Allegations.

## CONCLUSION

For the following reasons, BuzzFeed's Motion to Dismiss Plaintiffs' Amended Complaint, or in the Alternative, Sever the Amended Complaint and Strike Allegations is **DENIED**. The Court encourages the parties to discuss settlement.

**SO ORDERED.**

DATED: September 30, 2021  
       New York, New York

_____  
The Hon. Andrew L. Carter, Jr.  
United States District Judge